# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

99 MAR 10 PM 3:04

CLERK-SANTA FE

MARIANNA SANDOVAL,

        Plaintiff,

vs.                           No. Civ. 98-0702 SC/WWD

STATE OF NEW MEXICO CHILDREN,
YOUTH, AND FAMILY DEPARTMENT,
and HEATHER WILSON, LORETTA HENRY,
and JEANETTE KINKER-VIGIL, in their
official and individual capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court *sua sponte* and on Defendants' Motion for Summary Judgment, filed August 4, 1998 [Doc. No. 10]. For the reasons set forth below, I shall partially deny and partially grant Defendants' motion. I also, *sua sponte*, shall partially remand this action and partially dismiss Defendants.

### I. BACKGROUND

In November 1995, after twenty-three years working for the State of New Mexico in Springer, and seven years as Deputy Supervisor of the New Mexico Boys School (Boys School) in Springer, while still keeping her Deputy Supervisor job title, Plaintiff allegedly was stripped of all job responsibilities without just cause or due



process. The stress of Plaintiff's work conditions and Defendants' actions resulted in Plaintiff having to take medical leave. After returning to work in the Spring of 1996, while still holding the title of Deputy Supervisor of the Boys School in Springer, Plaintiff was detailed first to Santa Fe and then to Albuquerque. Plaintiff allegedly continued to be deprived of any job responsibilities or duties. In January 1997, Plaintiff allegedly involuntarily retired.

The Boys School is an entity or program run by Defendant State of New Mexico Children, Youth, and Family Department (CYFD). At all times pertinent, Defendants Heather Wilson, Loretta Henry, and Jeanette Kinker-Vigil were employees of CYFD-- Heather Wilson as the Secretary of CYFD, Loretta Henry as Director of the Juvenile Justice Division of CYFD, and Jeanette Kinker-Vigil as Superintendent of the Boys School.

Plaintiff filed a three-count Complaint in the Thirteenth Judicial District Court of the State of New Mexico for breach of contract, retaliation, and civil rights violations under the Due Process Clause of the First and Fourteenth Amendments and 42 U.S.C. § 1983 and 42 U.S.C. § 1983(5).[1] Plaintiff's Complaint is essentially for constructive

---

[1] Section 1985 prohibits persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law." 42 U.S.C. § 1985(3). Section 1985 is narrowly construed to avoid converting the statute into a general federal tort law. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993); see also Francisco v. Long, 132 F.3d 42, 1997 WL 796481 at *2-*3 (10th Cir. Dec. 31, 1997) (unpublished opinion). A violation of § 1985 must include class-based or racially invidious discriminatory animus on the part of the Defendant. See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). "[I]n the absence of allegations of class-based or racial discriminatory animus, the complaint fails to state a claim under § 1985." Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979). Here, Plaintiff has alleged employment deprivations based, at least partially,

2

discharge and retaliation. Plaintiff seeks actual, compensatory, and punitive damages, as well as declarative and injunctive relief. Defendants removed the case to federal court pursuant to 28 U.S.C. § 1441, alleging original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.[2] Discovery, except on the narrow issue of qualified immunity, has been stayed pending my ruling on Defendants' motion.

## II. ELEVENTH AMENDMENT - COUNTS I, II, AND III

The Eleventh Amendment bars suits in federal court for damages against states, state agencies or departments, or against state officials in their official capacity by citizens of these states, unless a state unequivocally waives its sovereign immunity or Congress expressly waives the states' sovereign immunity in creating a federal statutory cause of action.[3] See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-

---

on her status as a Democratic Party member and supporter of other members of the Democratic Party. It is unclear what constitutes a "class" for purposes of § 1985. See Bray, 506 U.S. at 269. The Supreme Court, in defining the term, has generally done so in the negative. See, e.g., id. (women seeking abortion not a qualifying class); United Brotherhood of Carpenters & Joiners v. Scott, 463 U.S. 825, 837 (1983) (economic or commercial animus beyond reach of § 1985). The Supreme Court, however, has left open "the question whether the deprivation clause might apply to conspiracy 'aimed at any class or organization on account of its political views or activities.'" Bray, 506 U.S. at 296 (quoting Carpenters, 463 U.S. at 837). Thus, there is some question whether Plaintiff's allegation is sufficient under § 1985(3) jurisprudence. However, because the sufficiency of Plaintiff's § 1985(3) claim is not contested by Defendants and because Plaintiff has made a conceivably meritorious claim, for purposes of this Opinion, I will assume that the § 1985(3) claim is valid. (I note that a conspiracy claim also may be brought under 42 U.S.C. § 1983. See Dixon v. City of Lawton, 898 F.2d 1443, 1449 (10th Cir. 1990).)

[2] Plaintiff's Complaint consists not only of federal law claims, but also state law claims. Additionally, Defendants are both state actors and individuals. In their removal petition, Defendants allege only that I have original jurisdiction, failing to explain the basis for my jurisdiction over the state law portion of Plaintiff's Complaint or over state actors. Although Plaintiff did not file a motion to remand, in her response to Defendants' summary judgment motion, Plaintiff states that federal jurisdiction over her state law claims against the State and the individual defendants in their official capacity is disputed.

[3] The Eleventh Amendment also precludes supplemental jurisdiction of pendent state law official capacity claims. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 119-23 (1984).

3

03 (1984); Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); see also Kentucky v. Graham, 473 U.S. 159 (1985); Hans v. Louisiana, 134 U.S. 1 (1890). Congress did not rescind the states' Eleventh Amendment immunity in enacting 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 341-45 (1979). Thus, where damages are sought in a § 1983 action, a state or a state official sued in her official capacity is not a "person" for § 1983 purposes, and cannot be sued under § 1983 in state or federal court. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); see also Quern, 440 U.S. at 341-45. The § 1983 Eleventh Amendment prohibitions apply equally to 42 U.S.C. § 1985 claims. See Bisbee v. Bey, 39 F.3d 1096, 1102 (10th Cir. 1994). I, therefore, *sua sponte*, will dismiss Defendant CYFD, and Defendants Heather Wilson, Lorreta Henry, and Jeanette Kinker-Vigil, in their official capacities, as to Plaintiff's § 1983 and § 1985(3) claims (Count III of the Complaint).

New Mexico has not waived its Eleventh Amendment immunity from suit in federal court. See N.M. Stat. Ann. § 41-4-4(F). A federal action against a state official in the official's official capacity is considered an action against the state and barred by the Eleventh Amendment. See Will, 491 U.S. at 71; *In re* State of New York, 256 U.S. 490, 500-01 (1921). Accordingly, Plaintiff's state law claims (Counts I and II of the Complaint) against Defendant CYFD and Defendants Heather Wilson, Lorreta Henry, and Jeanette Kinker-Vigil, in their official capacities, will be remanded.

Finally, while I have supplemental jurisdiction over Plaintiff's state law claims against Defendants Heather Wilson, Lorreta Henry, and Jeanette Kinker-Vigil, in their individual capacities, I find that the exercise of such jurisdiction in this case would be inappropriate for legal, equitable, and practical reasons. See Archuleta v. Lacuesta, 131 F.3d 1359, 1368 n.4 (10th Cir. 1997) (Baldock, J., dissenting); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-51 (1988); Westinghouse Credit Corp. v. Thompson, 987 F.2d 682, 684-85 (10th Cir. 1993). Therefore, Plaintiff's state law claims (Counts I and II of the Complaint), as to Defendants Heather Wilson, Lorreta Henry, and Jeanette Kinker-Vigil, in their individual capacities, also will be remanded.

## III. QUALIFIED IMMUNITY - COUNT III

The remaining issue is Plaintiff's Count III § 1983 and § 1985(3) claims against Defendants Heather Wilson, Lorreta Henry, and Jeanette Kinker-Vigil, in their individual capacities (hereinafter "Defendants"). Plaintiff specifically asserts that, beginning in November 1995 and culminating in January 1997 with her constructive discharge, Defendants denied her procedural and substantive due process rights and her rights under the First Amendment by violating her recognized property interest in her employment with CYFD, her recognized liberty interest in maintaining and promoting her good name and career in public employment, and her right to free speech and association without interference by the State of New Mexico. In their summary judgment pleadings, Defendants assert that (1) Plaintiff failed to allege a property or

liberty interest sufficient to invoke constitutional protections, or, in the alternative, (2) a defense of qualified immunity bars Count III.

A. **Legal Standard**

Special rules are applied when a defendant raises the defense of qualified immunity. "Once the defendant pleads qualified immunity, the burden shifts to the plaintiff to demonstrate (1) the defendant's conduct violated the law, and (2) the relevant law was clearly established when the alleged violation occurred." Migneault v. Peck, 158 F.3d 1131, 1139 (10th Circ. 1998); see Anderson v. Creighton, 483 U.S. 635, 640 (1987). "In showing that the law was clearly established, the plaintiff does not have to show that the specific action at issue has been held unlawful, but the alleged lawfulness of the defendant's conduct must be apparent in light of preexisting law." Armijo v. Wagon Mound Public Sch., 159 F.3d 1253, 1260 (10th Cir. 1998); see Migneault, 158 F.3d at 1139. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640. To show a right is clearly established, there must be Supreme Court or Tenth Circuit law on point, or the weight of authority from other courts must support the Plaintiff's proposition. See Armijo, 159 F.3d at 1260; Migneault, 158 F.3d at 1139-40. If Plaintiff meets her burden of coming forward with facts or allegations which would demonstrate that Defendants' alleged violation should have been apparent in light of preexisting law, then Defendants

6

assume the normal summary judgment burden of establishing that no material facts remain in dispute that would defeat their claim of qualified immunity. See Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th Cir. 1992); Jantz v. Muci, 976 F.2d 623, 627 (10th Cir. 1992); see also Brown v. City of Belen, 141 F.3d 1184, 1998 WL 115856 at *3 (10th Cir. March 16, 1998) (unpublished disposition). Unless both prongs of the test are satisfied, qualified immunity must be granted. See Migneault, 158 F.3d at 1139; see also Lackey v. County of Bernalillo, __ F.3d __, 1999 WL 2461 at *3 (10th Cir. Jan. 5, 1999) (unpublished disposition). If Plaintiff fails to demonstrate Defendants' conduct violated the law, I need not determine whether the law was clearly established. See Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993); see also Lackey, __ F.3d ___, 1999 WL 2461 at *3.

### B. Substantive Due Process

Defendants are entitled to qualified immunity as to Plaintiff's substantive due process claim in Count III. The substantive Due Process Clause protects those rights that are fundamental, see Palko v. Connecticut, 302 U.S. 319, 325 (1937), or protects against governmental action that is so opprobrious that it "shocks the conscience," see Rochin v. California, 342 U.S. 165, 172 (1952). Neither the Supreme Court nor the Tenth Circuit has specifically held that the substantive Due Process Clause protects a public employee's property interest in her employment or that it is implicated in constructive discharge cases. See Archuleta v. Colorado Dep't of Insts., 936 F.2d

483, 489 n.6 (10th Cir. 1991); Roe v. Antle, 964 F. Supp. 1522, 1531 (D.N.M. 1997). In the absence of Supreme Court or Tenth Circuit precedent, I may look to the law of other circuits for support of a plaintiff's position that a constitutional right exists. The law of other circuits is divided. The Sixth, Seventh, and Eleventh Circuits have held there is no substantive due process protection of continued employment. See McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994); Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1350-51 (6th Cir. 1992); Brown v. Brienen, 722 F.2d 360, 366-67 (7th Cir. 1983); cf. Lum v. Jensen, 876 F.2d 1385, 1389 (9th Cir. 1989) (holding that in Ninth Circuit in 1984 there was "no clearly established constitutional right to substantive due process protection of continued employment").[4] The First, Second, Fifth, and Eight Circuits have found to the contrary. See Harrington v. Harris, 118 F.3d 359, 368 (5th Cir. July 21, 1997); Newman v. Massachusetts, 884 F.2d 19, 25 (1st Cir. 1989); Moore v. Warwick Pub. Sch. Dist. No. 29, 794 F.2d 322, 328-29 (8th Cir. 1986); Gargiul v. Tompkins, 704 F.2d 661, 668 (2d Cir. 1983), judgment vacated on other grounds, Tompkins v. Gargiul, 465 U.S. 1016 (1984).

I find that even if I were to conclude that an individual's property interest in continued or public employment does trigger substantive due process guarantees, given the lack of pertinent Supreme Court or Tenth Circuit law and the conflict among the

---

[4] I note that a fellow court has adopted the Eleventh Circuit's position. See Roe v. Antle, 964 F. Supp. 1522, 1531-33 (D.N.M. 1997).

Circuits, I cannot conclude that the law on this issue was established with sufficient clarity in 1995-1997. Therefore, Plaintiff's Count III claim based on substantive due process is barred by the doctrine of qualified immunity and summary judgment will be granted as to this issue.

C.  **Procedural Due Process (Liberty Interest)**

Defendants are entitled to qualified immunity as to Plaintiff's liberty interest claim in Count III. Plaintiff has failed to sufficiently allege § 1983 and § 1985 claims based on a violation by Defendants of her liberty interest in her reputation and career. "To show a deprivation of a liberty interest, [P]laintiff must show the (1) publication (2) of false statements (3) impugning [her] good name or reputation . . . (4) which occurred in the course of terminating [her] or which foreclosed other employment opportunities." Harjo v. Varnum Public Sch., 166 F.3d 347, 1998 WL 817754 at *3 (10th Cir. Nov. 27, 1998) (unpublished disposition) (citing Watson v. University of Utah Med. Ctr., 75 F.3d 569, 579 (10th Cir. 1996)); see Codd v. Velger, 429 U.S. 624, 627-28 (1977); Bishop v. Wood, 426 U.S. 341, 348 (1976); Paul v. Davis, 424 U.S. 693, 710 (1976); Board of Regents v. Roth, 408 U.S. 564, 573-74 (1972); Melton v. City of Oklahoma City, 928 F.2d 920, 926-27 (10th Cir. 1991) (en banc). Plaintiff's allegations fail to satisfy the above four-part test, and thus Plaintiff's allegations do not rise to the level of a constitutional deprivation. Accordingly,

Defendants are entitled to qualified immunity and summary judgment will be granted as to Plaintiff's liberty interest claim in Count III.

**D.  Procedural Due Process (Property Interest) and the First Amendment**

Summary judgment will be denied as to Plaintiff's property interest and First Amendment claims in Count III. There is no dispute that Plaintiff, a permanent public employee who could only be dismissed for just cause, had a constitutionally protected property interest in employment. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985). When an employee has a property interest in continued employment, the employer cannot deprive the employee of that property right without due process. See Loudermill, 470 U.S. at 538. Furthermore, while a voluntary retirement does not implicate the Due Process Clause, "[a] public employer obviously cannot avoid its constitutional obligation to provide due process by the simple expedient of forcing involuntary ['retirements']." Stone v. University of Maryland Med. Sys. Corp., 855 F.2d 167, 173 (4th Cir. 1988); see Parker v. Board of Regents of Tulsa Junior College, 981 F.2d 1159, 1162 (10th Cir. 1992).

Defendants have failed to address Plaintiff's First Amendment claims. Nevertheless, it is clear that a public employer may not condition employment or its incidents upon an employee's relinquishment of her First Amendment rights or retaliate against an employee for exercising her constitutionally protected right of free speech or association. See Rutan v. Republican Party of Illinois, 497 U.S. 62, 75 (1990);

Connick v. Meyers, 461 U.S. 138, 142, 146-47 (1983); Branti v. Finkel, 445 U.S. 507, 517-18 (1980); Elrod v. Burns, 427 U.S. 347, 372-73 (1976) (plurality); Pickering v. Board of Educ., 391 U.S. 563, 568 (1968); see also Childers v. Independent Sch. Dist. No. 1, 676 F.2d 1338, 1342 (10th Cir. 1982). Plaintiff alleges that as a result of her affiliation with Democratic Party; her support of Democratic political candidate Bruce King; her articulated support of the Boys School programs and superintendent prior to Defendant Kinker-Vigil; her objection to Defendants' refusal to investigate, discipline, or prosecute employee malfeasance at the Boys School; her objection to Defendants' diversion of funds appropriated by the state legislature for capital improvement projects at the Boys School to other unauthorized purposes; her objection to Defendants' failure to respond to legitimate management requests essential to the ongoing function of the Boys School; and her exercise of free political expression, Defendants took adverse employment action against her by causing her to work outside previously defined job duties as approved by the state personnel office; preventing her from performing official functions or her assigned job duties as Deputy Superintendent of the Boys School; constructively demoting her to a non-existent position without *bona fide* job duties in November 1995, contrary to state statute; preventing her from performing any services on behalf of the state; forcing her to commute from her duty station in Springer to Santa Fe, a four-hour commute, while

11

under medication; transferring her work station from Springer to Albuquerque, contrary to law, and constructively discharging her on or about January 31, 1997.

Plaintiff's allegations are sufficient to raise an inference that Defendants retaliated against Plaintiff because of her speech and/or political association or affiliation. Viewing the alleged facts in the light most favorable to Plaintiff, I conclude that (1) Plaintiff was adversely affected, finding herself in a *de facto* dead-end position, due to her political background, see Rutan, 497 U.S. at 73; (2) Plaintiff's speech involved a matter of public concern, see Connick, 461 U.S. at 145, 147-48; Pickering, 391 U.S. at 574; Melton v. City of Oklahoma City, 879 F.2d 706, 713 (10th Cir. 1989); Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988); see also Lytle v. City of Haysville, 138 F.3d 857, 863 (10th Cir. 1998); (3) Plaintiff's interest in commenting upon these matters outweighed the State's interest, as an employer, and Defendants' interests in promoting efficient provision of its public services by their employees, see Connick, 461 U.S. at 142, 150-51; Pickering, 391 U.S. at 568; Melton, 879 F.2d at 713. Furthermore, I can draw no inference of disruptive consequences arising from Plaintiff's speech. See Connick, 461 U.S. at 151-52. I also cannot conclude that Plaintiff's protected speech (or political association) was not a motivating factor for Defendants' alleged adverse employment actions or that Defendants would not have taken the same action against Plaintiff in the absence of the protected speech (or

under medication; transferring her work station from Springer to Albuquerque, contrary to law, and constructively discharging her on or about January 31, 1997.

Plaintiff's allegations are sufficient to raise an inference that Defendants retaliated against Plaintiff because of her speech and/or political association or affiliation. Viewing the alleged facts in the light most favorable to Plaintiff, I conclude that (1) Plaintiff was adversely affected, finding herself in a *de facto* dead-end position, due to her political background, see Rutan, 497 U.S. at 73; (2) Plaintiff's speech involved a matter of public concern, see Connick, 461 U.S. at 145, 147-48; Pickering, 391 U.S. at 574; Melton v. City of Oklahoma City, 879 F.2d 706, 713 (10th Cir. 1989); Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988); see also Lytle v. City of Haysville, 138 F.3d 857, 863 (10th Cir. 1998); (3) Plaintiff's interest in commenting upon these matters outweighed the State's interest, as an employer, and Defendants' interests in promoting efficient provision of its public services by their employees, see Connick, 461 U.S. at 142, 150-51; Pickering, 391 U.S. at 568; Melton, 879 F.2d at 713. Furthermore, I can draw no inference of disruptive consequences arising from Plaintiff's speech. See Connick, 461 U.S. at 151-52. I also cannot conclude that Plaintiff's protected speech (or political association) was not a motivating factor for Defendants' alleged adverse employment actions or that Defendants would not have taken the same action against Plaintiff in the absence of the protected speech (or

political association). See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Melton, 879 F.2d at 713.

Because Plaintiff has protected property and First Amendment interests, the next inquiry is whether the law was clearly established in 1995-1997 such that Plaintiff was deprived of her procedural due process and/or First Amendment rights by Defendants' alleged actions. Reframed, the question is whether the facts as alleged by Plaintiff support a claim of violation of clearly established law. Defendants cannot seriously argue that the law of constructive discharge or of First Amendment retaliation was not clearly established in 1995-1997, such that a public official would not be on notice of the contours of the law of constructive discharge or retaliation for the exercise of First Amendment rights.

With respect to the due process property right claim, courts in the Tenth Circuit as far back as 1985 were adjudicating constructive discharges in a § 1983 context. See Bailey v. Kirk, 777 F.2d 567, 579, 580 (10th Cir. 1985); see also Yearous v. Niobrara County Mem'l Hosp., 128 F.3d 1351, 1355 (10th Cir. 1997). Defendants contend, however, that Plaintiff was not constructively discharged, but rather she voluntarily retired. In determining whether Plaintiff's retirement was involuntary, I consider the totality of the circumstances under an objective standard. See Parker, 981 F.2d at 1162; see also Yearous, 128 F.3d at 1356. "Constructive discharge occurs when a reasonable person in the employee's position would view the working conditions as

intolerable. That is to say[,] the working conditions, when viewed objectively, must be so difficult that a reasonable person would feel compelled to resign [or retire]." Yearous, 128 F.3d at 1356.

Plaintiff has alleged that, while keeping at all times her title as Deputy Supervisor of the Boys School in Springer, she first was stripped of her job duties, given no new responsibilities, and relocated from the Deputy Supervisor office to a room with no desk; then, after returning from medical leave (which was required, at least in part, by the stress of Defendants' conduct), she was detailed to Santa Fe, commuting four hours a day from her duty station in Springer, and doing nothing for four hours a day; and, finally, she was detailed to Albuquerque, where her office was table space in the mail/photocopy room, and she again was without any job responsibilities or duties, left to twiddle her thumbs. Plaintiff has adequately alleged a claim of constructive discharge to survive summary judgment on her procedural due process (property interest) claim on qualified immunity grounds.[5] I simply cannot accept Defendants' contention that an objectively reasonable official would believe in 1995-1997 that attempting to force an employee to resign or retire by enforced idleness,

---

[5] I note that the Tenth Circuit has specifically cited a Seventh Circuit case with facts similar to ones alleged by Plaintiff to support its holding that constructive discharges were a violation of constitutional rights. See Bailey v. Kirk, 777 F.2d 567, 579 (10th Cir. 1985), citing with approval, Parrett v. City of Connersville, Indiana, 737 F.2d 690, 694 (7th Cir. 1984) (holding that a person could be effectively deprived of a property interest in a job by being relegated to the basement with no work to do).

*de facto* demotions, lengthy commutes, and otherwise making working conditions intolerable was not clearly against the law.

With respect to Plaintiff's First Amendment retaliation claim, the protected status of Plaintiff's alleged political speech and association was sufficiently clear in 1995-1997 that Defendants reasonably should have been on notice that their alleged actions would violate Plaintiff's First Amendment rights. As early as 1986, the Tenth Circuit has held, for example, that retaliatory employment action because of complaints about school conditions is a violation of the First Amendment. See Wren v. Spurlock, 798 F.2d 1313, 1318 (10th Cir. 1986). The Supreme Court has held since 1976 that detrimental employment action based upon a public employee's political party affiliation and support violates the employee's First Amendment rights. See Rutan v. Republican Party of Illinois, 467 U.S. 62, 65, 75 (1990); Branti, 445 U.S. at 517-18; Elrod, 427 U.S. at 372-73. Employment action in contravention of the First Amendment need not be dismissal (or constructive discharge), but may be lesser deprivations, such as transfers, denials of promotions, or denials of other employment opportunities. See Rutan, 467 U.S. at 75; Wren, 798 F.2d at 1318; see also Dill v. City of Edmond, 155 F.3d 1193, 1205 (10th Cir. 1998) (compiling cases from other circuits before 1992). Thus, not only may the alleged involuntary retirement be a clearly established violation of Plaintiff's First Amendments rights, but also the alleged

harassment, improper job detailing or "transferring," and deprivation of all job responsibilities.[6]

Plaintiff, thus, has carried her burden under the two-pronged qualified immunity test for both her property interest and First Amendment claims. Plaintiff's allegations are sufficient to raise factual issues regarding whether she was constructively discharged and retaliated against by Defendants in violation of her clearly established constitutional rights. Since there are still disputed issues of material fact surrounding both the Count III procedural due process constructive discharge and First Amendment retaliation grounds of Plaintiff's claims, summary judgment is inappropriate. Therefore, Defendants' motion for summary judgment and request for qualified immunity will be denied as to Plaintiff's claims for procedural due process (property interest) and First Amendment violations in Count III.

**NOW, THEREFORE, IT IS ORDERED** that Counts I and II of Plaintiff's Complaint are, *sua sponte*, hereby REMANDED.

**IT IS FURTHER ORDERED** that Defendant State of New Mexico Children, Youth and Family Department and Defendants Heather Wilson, Lorreta Henry, and

---

[6] I note that under New Mexico's Personnel Act employment deprivations based upon political association are prohibited. See N.M. Stat. Ann. §§ 10-9-21(A), (E).

Jeanette Kinker-Vigil, in their official capacities, are, *sua sponte*, hereby DISMISSED as Defendants as to Count III of Plaintiff's Complaint.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, filed August 4, 1998 [Doc. No. 10], is PARTIALLY GRANTED, and Count III is hereby DISMISSED insofar as it seeks relief for violations of Plaintiff's substantive due process and liberty interests because Defendants Heather Wilson, Lorreta Henry, and Jeanette Kinker-Vigil, in their individual capacities, are entitled to qualified immunity.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, filed August 4, 1998 [Doc. No. 10], is hereby PARTIALLY DENIED as to the request for qualified immunity or dismissal of Plaintiff's Count III property interest and First Amendment claims.

_____
SENIOR UNITED STATES DISTRICT JUDGE


Counsel for Plaintiff: E. Justin Pennington, LAW OFFICES OF E. JUSTIN PENNINGTON, Albuquerque, New Mexico

Counsel for Defendants: Kevin M. Brown, BROWN & GERMAN, Albuquerque, New Mexico